UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| ANTHONY BELVIN | CIVIL ACTION |
| --- | --- |
| VERSUS | NO: 17-01776 |
| GREG CHAMPAGNE, SHERIFF OF ST. CHARLES PARISH, ET AL | SECTION: "E"(4) |

## PARTIAL REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge to conduct hearings, including an Evidentiary Hearing, if necessary, and to submit Proposed Findings and Recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **42 U.S.C. § 1983**.

I.  **Factual Summary**

   A.  **Procedural Background**

The Plaintiff, Anthony Belvin, filed this action against the Defendants, Sheriff Greg Champagne, individually and in his official capacity as Sheriff of St. Charles Parish, and Major Alvin Robinson, individually and in his official capacity as Warden of the Nelson Coleman Correctional Center ("NCCC"), and an unidentified party (Sheriff Champagne and Major Robinson, collectively, "Defendants"), alleging negligence in providing medical care in violation of 42 U.S.C. § 1983 and the Eighth and Fourteenth Amendments to the United States Constitution. The Plaintiff also indicated his intent to sue several unnamed John Does, Nos. 1-10, who were the deputies who worked on his tier.

The Plaintiff amended the Complaint and added the United States of America, the United States Department of Justice, the Federal Bureau of Prisons, and the Oakdale Federal Detention Center in Oakdale, Louisiana. This lawsuit was filed by the Plaintiff pursuant to the Federal Tort Claims Act and he noted that he is presenting his claim to the appropriate federal agency and will await a determination from the agency, alleging that he is protectively filing the Complaint to avoid a prescriptive period limitation.

On May 4, 2017, the Defendants filed a **Motion to Dismiss Under Rule 12(b)(6) (R. Doc. 11)**, contending that the allegations in the Plaintiff's complaint are insufficient to state a claim upon which relief may be granted. Specifically, the Defendants contend that (1) the Plaintiff has not alleged that a promulgated policy was the force that resulted in the alleged constitutional violation, (2) they were not directly involved in the misconduct or acted with deliberate indifference, (3) the Plaintiff alleged insufficient facts to show the existence of a breached duty, and (4) alternatively, and to the extent that the Plaintiff alleges a claim of malpractice, the Plaintiff failed to pursue relief before the medical review panel.

The Plaintiff opposes the Defendants' Motion to Dismiss, contending that: (1) the allegations in the Complaint were sufficient to place the Defendants on notice of the claim, and if it is not, then the Plaintiff requests leave to amend the claim in lieu of a dismissal; (2) the allegations of deliberate indifference were sufficient to state a claim; (3) even if the claim sounds in medical malpractice, the Defendants would not be entitled to dismissal of the claim; and (4) because the Plaintiff's claim involves a failure to respond to his medical needs, such a claim is not covered by the Louisiana Medical Malpractice Act such that no medical review panel is necessary. R. Doc. 18.

    B.    <u>**The Original Complaint**</u>

The Plaintiff, while incarcerated in Nelson Coleman Correctional Center ("NCCC") from December 4, 2015, through March 29, 2016, began experiencing abdominal pain. R. Doc. 1. Consequently, he made complaints about the discomfort to the staff members at the prison. On March 29, 2016, the Plaintiff was transferred to Oakdale Federal Correctional Institution ("Oakdale") and continued his complaints of abdominal pain. The Plaintiff alleges that the staff at Oakdale did not resolve his complaints. Shortly thereafter, on April 7, 2016, at 1:00 a.m., the Plaintiff went to the bathroom, passed out and remained unconscious for about thirty to forty minutes. The Plaintiff alleges that another inmate pulled the fire alarm to notify the staff, and he

was rushed to the local emergency room. Upon arriving at the hospital, the Plaintiff underwent emergency surgery to remove a large inflammatory mass, which consisted of a resection of the cecum, terminal ileum with appendix, and mass.

The Plaintiff complains that Sheriff Champagne failed to provide adequate care, failed to instruct or properly train his employees on how to recognize the need for medical care, and failed to use due care in the operation of the "Oakdale Federal Correction Institute." R. Doc. 1, p.4. Moreover, the Plaintiff also alleges that the Sheriff failed to transport him to a medical facility. In addition to suing Sheriff Champagne, the Plaintiff also sues Major Alvin Robinson for failing to provide adequate medical care, failing to instruct or train his employees in the performance of their duties to provide adequate medical care, and failing to transport Plaintiff to a medical facility.

Furthermore, the Plaintiff alleges that several unidentified prison officials were responsible for his "injuries," either by their action or inaction because they (1) failed to provide adequate medical care, (2) failed to respond in an appropriate manner, (3) failed to use due care in the operation of the Nelson Coleman Correctional Center, (4) failed to transport Plaintiff to a medical facility, and (5) failed to have adequate procedures in place to recognize and avoid the incident. As to each of the Defendants, the Plaintiff also asserts state law negligence claims and seeks attorney's fees pursuant to 42 U.S.C. § 1988.

  **C.**  **Amended Complaint**

On April 3, 2017, the Plaintiff amended the Complaint to assert a claim pursuant to the Federal Tort Claims Act and a *Bivens* claim. R. Doc. 9. Specifically, the Plaintiff alleges that, while in Oakdale, he was in the custody and care of employees of the United States of America, the United States Department of Justice, the Federal Bureau of Prisons, and the Oakdale Federal Detention Center. The Plaintiff contends that the Defendants are liable to him for all sums that are reasonable, including punitive damages and attorney's fees, and injunctive relief.

## II. Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court must accept all well-pleaded facts as true, viewing the complaint in the light most favorable to the plaintiff. *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010); *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).

The Supreme Court, however, has declared that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (internal citation omitted). Moreover, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and "[t]he plaintiff must plead enough facts to state a claim to relief that is plausible on its face." *Guidry*, 512 F.3d at 180 (quotation marks omitted). The United States Supreme Court also has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Iqbal*, 556 U.S. at 678 (citations and quotation marks omitted).

In determining whether a complaint states a claim that is plausible on its face, the court "draw[s] on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Thus, as mentioned above, to avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). In order for a claim to be plausible at the pleading stage, the complaint need not strike the reviewing court as probably meritorious, but it must raise "more than a sheer possibility" that the defendant has violated the law as alleged. *See Id*. Furthermore, the factual

4

allegations must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## III. Analysis

### A. Claims against Sheriff Champagne and Major Robinson

Defendants, who were sued in their official capacity, contend that a suit against them in their official capacity is a claim against the governmental entity, such that the Plaintiff should have pled an official policy or custom that caused the violation. Moreover, the Defendants contend that the Plaintiff cannot infer a policy simply because harm resulted and without identifying any specific wrongdoing. As a result, Defendants contend that the Plaintiff fails to state a claim for which relief can be granted.

The Plaintiff contends that he sufficiently pled a claim for local government liability, noting that there is no heightened pleading requirement. Relying on *Conley*, Belvin asserts that his complaint was sufficient because it gave the Defendants fair notice of his negligence claim and the grounds on which it rests, which, in this case, is failure to provide medical care. As such, the Plaintiff contends that the subject motion should be dismissed because he has met the notice requirement.

"Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent." *Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). Accordingly, the official-capacity claims against these defendants would in reality be claims against the local governmental body they serve, which is St. Charles Parish.

Local governing bodies like the Parish of St. Charles are "persons" within the meaning of § 1983 and therefore, are subject to suit under that provision. *Monell*, 436 U.S. at 694. However, a local governing body may not be held vicariously liable for the actions of its employees; rather, it can be liable only "when execution of a government's policy or custom . . . inflicts the injury

that the government as an entity is responsible." *Id.* Similarly, actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they act in execution of an official policy. *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984), *on reh'g*, 739 F.2d 993 (5th Cir. 1984); *see also Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 403 (1997).

A plaintiff also must identify the particular policy or custom which allegedly caused the deprivation of his constitutional rights. *See*, *e.g.*, *Murray v. Town of Mansura*, 76 F. App'x 547, 549 (5th Cir. 2003); *Treece v. La.*, 74 F. App'x 315, 316 (5th Cir. 2003). "A plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity." *Colle v. Brazos Cty., Tx.*, 981 F.2d 237, 245 (5th Cir. 1993). A plaintiff also must allege not merely that an unconstitutional policy or custom exists, but that it was the proximate cause of his injury. *See Collins v. City of Harker Heights*, 503 U.S. 115, 122-24 (1992); *Berry v. McLemore*, 670 F.2d 30, 33-34 (5th Cir. 1982), *overruled on other grounds*, *Int'l Woodworkers of Am. v. Champion Int'l Corp.*, 790 F.2d 1174 (5th Cir. 1986). Thus, "'[m]unicipal liability under Section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom.'" *Zarnow v. City of Whichita Falls, Tx.*, 614 F.3d 161, 166 (5th Cir. 2010) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)); *Cox v. City of Dallas,* 430 F.3d 734, 748 (5th Cir. 2005) (same).

The Plaintiff has failed to allege a *Monell* claim against the Parish of St. Charles, and necessarily, is unable to do so against the Defendants. The Plaintiff alleges that deputies violated his constitutional rights while acting under the color of state law as a result of an official custom, policy or procedure; however, the Plaintiff does not point to any policy implemented by the Defendants that was a moving force in the alleged Constitutional violation. Where the plaintiff fails to allege that the purported violations at issue resulted from an official policy or custom, dismissal of such claims is appropriate. *See Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir.

2001); *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 533 (5th Cir. 1996); *Causey v. Parish of Tangipahoa*, 167 F. Supp. 2d 898, 905-06 (E.D. La. 2001).

**B.     Inadequate Medical Care**

Furthermore, the Defendants, sued in their individual capacities, also seek dismissal of the inadequate medical care claim filed against them, contending that the Plaintiff does not allege that they were directly involved in his medical care. The Defendants point out that the Complaint and First Amended Complaint do not suggest that the Plaintiff made the complaints regarding his medical condition to them and that they ignored them.

On the other hand, the Plaintiff opposes the dismissal of the inadequate medical care claim, alleging that he made complaints to the staff at NCCC and that they ignored the complaints. The Plaintiff further alleges that, by the time he was transferred to Oakdale, he underwent emergency surgery. Therefore, the Plaintiff contends that the failure to respond amounted to deliberate indifference.

Claims of deliberate indifference by prison personnel to a prisoner's serious medical needs is actionable under § 1983. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006); *Lewis v. Evans*, 40 F. App'x 263, 264 (5th Cir. 2011).

Under *Estelle*, deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary wanton infliction of pain," proscribed by the Eighth Amendment. *Estelle*, 429 U.S. at 104. This is true where the indifference is manifested by prison officials or prison healthcare providers in their response to the prisoner's needs or in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Id.*

A prison official is deliberately indifferent if he or she has actual knowledge of a substantial risk of harm to an inmate and disregards that substantial risk. *Farmer v. Brennan*, 511 U.S. 825,

7

847 (1994); *see also Parrish v. Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004) (the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury); *Washington v. La Porte County Sheriff's Dep't*, 306 F.3d 515 (7th Cir. 2002) (same). In applying this standard, the courts have held that "the prisoner must show that the defendants (1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed." *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998) (citing *Farmer*, 511 U.S. at 837). "Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of a substantial risk." *Id*. (citing *Farmer*, 511 U.S. at 842 & n.8).

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a <u>stringent</u> standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. . . . The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

*Southard v. Tex. Bd. of Crim. Just.*, 114 F.3d 539, 551 (5th Cir. 1997) (citing *Bd. of County Comm'rs v. Brown*, 520 U.S. 397 (1997)) (citations omitted) (emphasis added).

In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. *Id.* at 106. Even so, disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs. *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). Therefore, inadequate medical treatment of inmates, at a certain point, may rise to the level of a constitutional violation, while malpractice or negligent care does not. *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999); *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993) ("It is clear that negligent medical treatment is not a cognizable basis upon which to predicate a section 1983 action."); *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982) ("mere negligence in giving or failing to supply medical treatment would not support an action under Section 1983."); *see also Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989). In addition,

8

a prisoner's mere disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs. *Gobert*, 463 F.3d at 346; *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

In addition, the mere delay alone in receiving medical treatment is usually not sufficient to state a claim under § 1983. *Mendoza*, 989 F.2d at 195; *see also, Wesson v. Oglesby*, 910 F.2d 278, 284 (5th Cir. 1990); *Simmons v. Clemons*, 752 F.2d 1053, 1056 (5th Cir. 1985) (concluding that two-hour deprivation of pain medication was not a violation of constitutional rights). Regardless of the length of the delay, the plaintiff, at a minimum, must show deliberate indifference to a serious medical need to rise to the level of a constitutional violation. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991); *see also Estelle,* 429 U.S. at 104-05.

Finally, to recover under § 1983 for individual liability, Belvin must identify both the constitutional violation and the responsible person acting under color of state law. *See Flagg Bros., Inc.*, 436 U.S. at 156. Also, proof of an individual defendant's personal involvement in the alleged wrong is a prerequisite to liability under §1983. *Douthit*, 641 F.2d at 345. Thus, supervisory officials like the Defendants cannot be held responsible pursuant to § 1983 under any theory of *respondeat superior* or simply because an employee or subordinate allegedly violated the plaintiff's constitutional rights. *See Alton v. Tex. A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999); *see also*, *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) ("Section 1983 does not create supervisory or respondeat superior liability."). A defendant is liable under § 1983 only if he had personal involvement in the alleged unconstitutional act. *Douthit*, 641 F.2d at 346. "In order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with *deliberate indifference* to violations of others' constitutional rights committed by their subordinates." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (alterations in original) (quoting *Gates*, 537 F.3d at 435)

In this case, the Plaintiff has not alleged that either of the Defendants were personally involved with his medical care or received any of his complaints as to the alleged abdominal pain. Instead, the Plaintiff seems to identify these prison officials in their supervisory capacity and roles at the prison. This is not an appropriate basis for liability under § 1983. Furthermore, there are no facts indicating the Plaintiff requested medical care that was intentionally denied or delayed, or that Sheriff Champagne had any role in the administration of the Oakdale Federal Correctional Institute.

Finally, as discussed above, the Plaintiff has not alleged that he has suffered any injury directly resulting from any order, training, or other policy implemented by the Defendants that would create a vicarious liability under § 1983 in the their supervisory role. *See Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992); *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 1991); *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987); *see also*, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988). As such, the motion should be granted to this extent.

### C. Failure to Train

The Plaintiff has also alleged that the Defendants failed to properly train their employees in the performance of their duties, including the recognition of the need for medical care and providing medical care. R. Doc. 9, p. 6-7.

"A supervisor may be liable for failure to supervise or train if '(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.'" *Mitchell v. City of New Orleans*, 184 F. Supp. 3d 360, 374 (E.D. La. 2016) (quoting *Porter*, 659 F.3d at 446); *Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir.1998). In order for an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference. *Smith*, 158 F.3d at 912. Furthermore, the plaintiff must

show that the failure to train "reflects a 'deliberate' or 'conscious' choice to endanger constitutional rights." *City of Canton*, 489 U.S. 378, 389 (1989).

> As the Fifth Circuit explains in *Good v. Harris Cty.*, 571 F.3d 388 (5th Cir. 2009):
>
> To establish deliberate indifference, a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation. Where a plaintiff fails to establish deliberate indifference, the court need not address the other two prongs of supervisor liability. Furthermore, for a supervisor to be liable for failure to train, the focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform. Moreover, for liability to attach based on an inadequate training claim, a plaintiff must allege with specificity how a particular training program is defective.

571 F.3d at 395 (internal quotations and citations omitted).

As such, before lack of training or supervision constitutes deliberate indifference, proof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required. *Snyder v. Trepognier*, 142 F.3d 791, 798-99 (5th Cir. 1998); *Thompkins v. Belt*, 828 F.2d 298, 304-05 (5th Cir. 1987). The plaintiff must generally demonstrate at least a pattern of similar violations. *Id.* at 798; *see City of Canton*, 489 U.S. at 390 n.10 (explaining that the inadequacy of training must be obvious and obviously likely to result in a constitutional violation). Nonetheless, a limited exception for single-incident liability exists only "where the facts giving rise to the violation are such that it should have been apparent to the policymaker that a constitutional violation was the highly predictable consequence of a particular policy or failure to train." *Burge v. St. Tammany Parish*, 336 F.3d 363, 372 (5th Cir. 2003).

The Plaintiff has not alleged that with any *specificity* how any *particular* training program or policy was inadequate. Nor has the Plaintiff alleged any facts that would suggest a pattern of similar violations. Even more, the Plaintiff has not alleged any factual context beyond mere conclusory allegations that the inadequate training was obviously flawed or likely to result in a constitutional violation such that the complaint makes a facially plausible claim of deliberate indifference in this context. As such, the motion should be granted to this extent.

#### D. Dismissal of State Tort Claims

The Defendants, next, claim that the Plaintiff has failed to allege a breach of any duty by them. R. Doc. 11-1, p. 7. In so doing, the Defendants note that the allegations are directed toward the medical treatment the Plaintiff received at Oakdale, a facility at which they have no control.

The Plaintiff has not addressed this issue. In reviewing the Complaint, while the Plaintiff named both Champagne and Robinson as defendants, he does not allege any direct involvement by either, which would give rise to their negligence. The only possible theory is that they had a duty to train their employees on how to recognize a serious medical need and that the failure to do so constituted a breach of that duty, which resulted in harm to the Plaintiff. In considering whether such a claim could be sufficient to allege a violation of state law, the Court finds that it is adequate. Therefore, the request to dismiss the state law claims against Champagne and Robinson is denied.

#### E. Medical Malpractice Act

Defendants also seek dismissal of any possible malpractice claim against the St. Charles Parish Sheriff's Office or the Defendants. The Defendants contends that, because it is a qualified healthcare provider pursuant to the Louisiana Medical Malpractice Act ("the Act"), La. Rev. Stat. Ann. § 40:1231.1, the claim against it is premature because the Plaintiff must submit his claims to the medical review panel. R. Doc. 11-1, p. 7. The Defendants further contend that, because the claim falls under the Act for the alleged failure to provide proper medical care addressing his complaints of abdominal pain, the claim must first be submitted to the medical review panel.

The Plaintiff alleges that he was not required to submit his claim to the medial review panel before filing it in this Court. R. Doc. 18, p. 7. He further argues that his § 1983 claims should not be dismissed even if his medical malpractice claim is premature. *Id.* at p. 8.

The Act governs claims of malpractice against qualified health care providers. Pursuant to La. Rev. Stat. Ann. § 40:1231.8(A)(1)(a), "[a]ll malpractice claims against health care providers covered by this Part, other than claims validly agreed for submission to a lawfully binding

arbitration procedure, shall be reviewed by a medical review panel established as hereinafter provided for in this Section." Malpractice is defined as "any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient... ." La. Rev. Stat. Ann. § 40:1231.1(13).

Here, the St. Charles Parish Sheriff's Office and the Nelson Coleman Correctional Center over which the Defendants preside are both qualified healthcare providers in Louisiana. R. Doc. 11-2. As such, any medical malpractice claim must first be brought before a medical review panel. *See John v. Woods*, No. 15-1701, 2016 WL 7852369, at *3 (W.D. La. Nov. 22, 2016) (citations omitted) ("Plaintiffs must submit malpractice claims to a medical review panel prior to filing suit. This requirement applies to malpractice claims brought within § 1983 actions.").

Note, the Plaintiff attempts to argue that his medical malpractice claims are not subject to the requirements under the Act. However, the Plaintiff is unclear as to why his claims would not be subject to the Act. On the one hand, the Plaintiff seemingly argues that the claims should be governed by the Medical Liability for State Services Act ("MLSSA"). However, the MLSAA does not apply in this context as political subdivisions of the State, including Parishes, are excluded from the act. La. Rev. Stat. Ann. § 40:1237.1(A)(9)(b); *Adams v. Foti*, No. 02-1059, 2004 WL 241859, at *3 (E.D. La. Feb. 5, 2004) (finding MLSAA does not apply to "medical services [provided] to inmates in the Sheriff's custody"). By the Plaintiff's own admission, "Louisiana sheriffs are not state agencies." R. Doc. 18, p. 10.

To the extent that the Plaintiff is arguing that he has no claims sounding in medical malpractice, he is also mistaken. The Plaintiff alleges that the Defendants failed to provide adequate medical care as a result of their negligence. R. Doc. 9, p. 6-7. This claim clearly sounds in negligence. As such, these state law medical malpractice claims should be dismissed until after the Plaintiff has presented them to a medical review panel. *See John*, 2016 WL 7852369, at *3; *Adams*, 2004 WL 241859, at *3-4.

Finally, the Court notes that the Plaintiff is correct that the dismissal of his medical malpractice claims do not warrant the dismissal of his § 1983 claims. *See Adams*, 2004 WL 241859, at *3-5 (dismissing state law medical malpractice claims and not dismissing § 1983 claims). And, to the extent that the Court recommends the dismissal of the Plaintiff's § 1983 claims against these Defendants, it does not do so because the Plaintiff has not brought his claims to a medical review panel. Instead, it has done so because the §1983 claims fail to state a claim for which relief can be granted as discussed previously.

## IV.  Recommendation

For the foregoing reasons, **IT IS THEREFORE RECOMMENDED** that the Defendants' **Motion to Dismiss Under Rule 12(b)(6) (R. Doc. 11)** be **GRANTED IN PART** and **DENIED IN PART** in the following manner.

**IT IS RECOMMENDED** that the Defendants' motion be **GRANTED** in part dismissing with prejudice the Plaintiff's § 1983 and state medical malpractice claims against the defendants, Sheriff Champagne and Major Robinson, each in their official and individual capacities.

**IT IS FURTHER RECOMMENDED** that the Defendants' motion be **DENIED** in part as to Plaintiff's state negligence claims against Sheriff Champagne and Major Robinson each in their individual and official capacities.

New Orleans, Louisiana, this 31st day of August 2017.

                                                **KAREN WELLS ROBY**
                              **CHIEF UNITED STATES MAGISTRATE JUDGE**